No. 209 March 12, 2025 725

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of G. W.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. M.,
*Appellant.*

Deschutes County Circuit Court
23JU06302; A184582

Bethany P. Flint, Judge.

Argued and submitted January 10, 2025.

Gabe Newland, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Shannon T. Reel, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

Mother appeals from a juvenile court judgment asserting dependency jurisdiction over her child G on the basis that mother was self-medicating her narcolepsy with the use of methamphetamine. On appeal, mother raises four assignments of error based on the argument that her drug use did not actually present a risk of harm to G. In her first assignment of error, she assigns error to the juvenile court's determination that her drug use interfered with her ability to safely parent her child. In her second and third assignments of error she argues that the court erred in asserting dependency jurisdiction on the basis of father's absence. In her fourth assignment, she challenges the determination that G was within the court's dependency jurisdiction. Based on mother's admission that she drove with G in the car while using methamphetamine, and the medical circumstances underlying the case, we conclude that the juvenile court did not err when it concluded that mother's drug use interfered with her ability to safely parent G. We also conclude that the court could rely on the common knowledge that methamphetamine laced with fentanyl is dangerous, can incapacitate individuals, and can easily lead to overdoses. Because the remaining assignments of error depend on the first, we affirm.

We review the juvenile court's jurisdictional determinations for legal error. *Dept. of Human Services v. M. B.*, 333 Or App 587, 590, 553 P3d 582 (2024). We "view the evidence in the light most favorable to the court's disposition to determine if it supports the court's legal conclusions." *Id.* We address the facts with the standard of review in mind.

Mother suffers from narcolepsy and severe anxiety. Mother had previously been on prescription Adderall to treat her narcolepsy, but her prescription was not renewed after she tested positive for methamphetamine. Mother then began to use methamphetamine four-to-five times a day in place of her prescription, in order to self-medicate her narcolepsy. Mother came to the attention of the Department of Human Services (DHS) after police found mother asleep in her running car with three-year-old G in the back seat. In a search of her car, police found heroin and methamphetamine.

Mother admitted that she would use methamphetamine and then drive while G was in the car. Mother was not charged with any offense, but DHS became involved as a result of the encounter. Father could not be located by the time of the jurisdictional trial.

The juvenile court took dependency jurisdiction on three bases:

"4D   The father is unwilling and/or unable to be a custodial resource.

"4E   The father does not have sole legal custody of the child and is unable to protect the child from the mother's untreated mental health and medical conditions.

"4H   The mother's mental health and/or medical conditions, when not treated and adequately managed, including not self-medicating with substances, interferes with her ability to safely parent the child."

On appeal, mother argues that there is no *per se* basis for jurisdiction, that parental drug use is not inherently harmful to a child, and that mother was careful not to expose G to drugs. DHS counters that mother's drug use presented a danger, and that mother had admitted to driving while using street drugs.[1]

The juvenile court has exclusive jurisdiction over cases involving minors "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others." ORS 419B.100(1)(c). Jurisdiction is appropriate when "under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. C. Z.*, 236 Or App 436, 440, 236 P3d 791 (2010). "DHS has the burden to prove that there is 'a nexus between the allegedly risk-causing conduct and the harm to the child,' and that the risk of harm is nonspeculative and present 'at the time of the hearing.'" *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 403, 328 P3d 769 (2014) (quoting *Dept. of Human Services v. C. J. T.*, 258 Or App 57, 62, 308 P3d 307 (2013)). Such harm must present a "threat

---

[1] DHS also argues that mother had failed to provide adequate medical care to G, but we summarily dispense with that argument as the juvenile court could did not assert dependency jurisdiction on that basis.

of serious loss or injury." *Dept. of Human Services v. A. F.*, 243 Or App 379, 386, 259 P3d 957 (2011).

We begin with whether there was sufficient evidence to support the juvenile court's determination that mother's drug use posed a risk of harm to G. Mother testified that she took efforts to ensure that her drug use was safe, but the evidence contradicted mother's testimony that she safely used and kept drugs. Mother also testified to using Adderall or Klonopin obtained from the streets, which she told an officer she knew sometimes had fentanyl laced in based on how she would feel after use, although she maintained that she never sought out fentanyl. The juvenile court in its ruling determined that the use of laced drugs presented a particular risk, noting "you can drop dead in the presence of your kiddo or while caring for your kiddo. And that's not super speculative based on the reality in which we live these days."

Mother argues that there was no evidence presented as to the dangers of fentanyl, that such facts were not judicially noticed, and that the court was overstating the danger. A court sitting as factfinder may rely on common knowledge much the same way a juror could. *See State v. Clowdus*, 326 Or App 36, 39, 530 P3d 525 (2023) (discussing jurors' use of common knowledge); *see State v. Hedgpeth*, 365 Or 724, 734, 452 P3d 948 (2019) (court sitting as factfinder may use common knowledge). The court could rely on the common knowledge that methamphetamine laced with fentanyl is dangerous, can incapacitate individuals, and can easily lead to overdoses. Under the circumstances and given mother's admission that her drugs were sometimes laced with fentanyl (which she would only find out after taking the adulterated drugs), the court reasonably concluded that mother's drug use posed a danger to G.

Most importantly to this analysis, there was undisputed evidence that mother would drive while using drugs with G in the car. Mother argues that there was insufficient evidence to prove that methamphetamine use interfered with her driving, reasoning that methamphetamine is a stimulant, much in the same way the caffeine in coffee is, and the court could not assume that driving under the

influence of a stimulant was dangerous. But coffee is not at high risk of being laced with fentanyl. Given that mother used street drugs to manage her narcolepsy, that her narcolepsy would cause her trouble while driving, and that she admitted to driving while on street drugs with G in the car, her drug use presented a nonspeculative risk of harm to G. Thus, the juvenile court did not err in asserting jurisdiction on basis 4H.

As to assignments of error two and three, which relate to father's unavailability as a care resource, mother argued only that they were insufficient bases by themselves. *See W. A. C.,* 263 Or App at 394 (DHS must prove that neither parent could safely care for the child). But because we conclude that mother's drug use was a valid jurisdictional basis, and mother does not challenge the underlying allegation that father was unavailable, we conclude that the juvenile court did not err in asserting jurisdiction on the basis of father's unavailability.

Mother's fourth assignment of error, that the juvenile court erred in ruling that G was within its dependency jurisdiction, is predicated on the other assignments of error. Thus, the juvenile court did not err in concluding that G was within its jurisdiction.

Affirmed.